**In re O.P. HELD, INC., Debtor.**

**Bankruptcy No. 87–00337.**

United States Bankruptcy Court,
N.D. New York.

July 17, 1987.

Penberthy, Kelly & Walthall, P.C., Utica, N.Y. for movant; William W. Kelly, of counsel.

Vincent R. Corrou, Utica, N.Y., for debtor.

Menter, Rudin & Trivelpiece, P.C., Syracuse, N.Y., for Syracuse Supply Co., Inc.; Peter L. Hubbard, of counsel.

Bond, Schoeneck & King, Syracuse, N.Y., for Otto P. Held; Robert K. Weiler, of counsel.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Bankruptcy Judge.

### FINDINGS OF FACT

O.P. Held, Inc. ("Debtor") filed a voluntary petition for relief under Title 11 of the Bankruptcy Code, 11 U.S.C. §§ 101–1330 ("Code") on March 13, 1987.

On April 7, 1987, Ronald E. Campion ("Campion"), a receiver appointed in a state court mortgage foreclosure action instituted by the Bank of Utica ("Bank") prior to March 13, 1987, filed a motion with the Court seeking an order pursuant to Code § 365(d)(2), 1) fixing the time within which the Debtor must assume or reject a certain lease, 2) fixing an interim rental, 3) promptly curing the Debtor's default in the event of assumption, or 4) failing to cure the

default, permit Campion to begin immediate eviction proceedings under state law.

At the request of the parties, the Campion motion was adjourned on its return date of May 4, 1987 to May 8, 1987. On May 7, 1987, Campion filed an amended motion seeking substantially the same relief, but adding as a basis for his motion, Code § 365(d)(4), which concerns leases of non-residential real property.

On May 8, 1987, both parties appeared by their respective attorneys to argue the motion. In the course of the very limited oral argument, Debtor's counsel stated, "the lease is going to be assumed, but of course the time for that isn't ... the 60 days on that isn't up yet. Mr. Williams did tell me that he wanted to continue on with the lease, ...". He later added, "the only thing we have to do between now and the 15th of May is to file the papers saying the corporation is going to continue on with the lease and that will be done."

The Court thereafter directed that the Debtor submit any affidavits and/or memorandum of law that it deemed necessary by May 12, 1987, and that Campion respond with any affidavits and/or memoranda by May 15, 1987.

At no time prior or subsequent to the argument of the motion has Debtor filed any written pleading or other document with the Court indicating its intent to assume or reject the lease of the properties which are the subject of the Bank's foreclosure action.

The lease in question pertains to two separate properties, and was entered into on July 1, 1983 between the Debtor as lessee and Gerald O. Williams as lessor. Williams is the Vice-president of the Debtor. The leased properties located at 1303 Rutger Street and 1310 Lansing Street, Utica, New York, apparently served as both the Debtor's corporate headquarters and manufacturing facility.

Campion has alleged, without dispute, that he was appointed a receiver of rents of the leased properties by virtue of an Order of the New York Supreme Court, Oneida County, dated February 18, 1987, entered in the Bank's mortgage foreclosure action.

Campion further alleges that on February 25, 1987, he notified Debtor of his receivership, and demanded payment of all future rent. Debtor did not thereafter pay rent, and the instant Chapter 11 petition was filed on March 13, 1987. The Order appointing Campion receiver provides, among other things, that he is "authorized to institute and carry on all legal proceedings necessary for the protection of the premises or to recover possession of the whole, or any part thereof,".

In connection with the instant motion, the Court notes that on May 27, 1987, 74 B.R. 777, it entered an Order lifting the automatic stay imposed pursuant to Code § 362, to permit the Bank to retake all of its collateral consisting generally of Debtor's inventory equipment and accounts receivable.

The Court has no actual knowledge of the current status of the Chapter 11 case in light of the May 27, 1987 Order. However, Bank's counsel notified the Court by letter dated June 15, 1987, (a copy of which was sent to Debtor's counsel), that it is proceeding with the liquidation of its collateral; while Debtor had been cooperative, it continued to occupy the leased premises without paying rent to the Bank.

## CONCLUSIONS OF LAW

Campion contends the 1984 Amendments to the Code, namely Code § 365(d)(3) and (4), materially change and strengthen the rights of landlords/lessors when a Chapter 11 debtor is the lessee, and the leased premises are non-residential in nature. As Campion points out in his Memorandum of Law, although the 1984 Amendments to Code § 365 are frequently referred to as the "shopping center" amendments the statutory language simply refers to "non-residential" real property and, therefore, those amendments are clearly applicable to the business premises of this Debtor. While the Court agrees with Campion's contention, the Court need only focus its attention on Code § 365(d)(4) in order to dispose of the instant motion.

The Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353 ("BAFJA") amended Code § 365 to address the often unfortunate position the landlord of desirable commercial property is thrust when a tenant files a bankruptcy case.

■ Campion alleges the Debtor has failed to comply with Code § 365(d)(3) which requires the Debtor "to timely perform all of its obligations under the lease" which includes payments of rent for the period between the order for relief and the assumption or rejection of the lease. *Matter of Longua*, 58 B.R. 503, 504–5 (Bankr. W.D.Wis.1986). In addition, it is Campion's contention that the Debtor has failed to comply with Code § 365(d)(4) since it has not filed an application to assume the lease which he contends Debtor must have done within 60 days after the order for relief.

It is this latter contention which the Court believes is dispositive of this case.

Prior to the enactment of BAFJA, there was a split of authority as to what actions on the part of either the trustee or the debtor were necessary to constitute an assumption of a lease. In 1983, Bankruptcy Judge Lundin rejected the debtor's contention that assumption of an unexpired lease could be accomplished by implication:

> The case provides a classic example of why assumption by action should be disapproved and the Code requirement of court approval strictly enforced. By agreed order and misunderstanding, the parties herein have managed to create great confusion requiring multiple court hearings, delay and uncertainty. All of this could have been avoided upon a single, properly noticed hearing on the application of some party to assume or reject this lease.

*Sealy Uptown v. Kelly Lyn Franchise Co., Inc., (In re Kelly Lyn Franchise Co., Inc.)* 26 B.R. 441, 446 (Bankr.M.D.Tenn.1983).

Conversely, in 1984 but prior to the effective date of BAFJA, District Judge Wexler reversed the decision of a bankruptcy court by holding "that the Trustee can assume the unexpired lease by action less formal than the Rule 9014 provision for a motion for court approval." *In re Ro-An Food Enterprises Ltd.*, 41 B.R. 416, 418 (E.D.N.Y.1984).

Since the enactment of BAFJA, however, the majority of courts considering the correct method whereby a trustee or debtor-in-possession assumes an unexpired lease, have concluded that a motion in the nature of a contested matter as provided for in Rule 9014 of the Federal Rules of Bankruptcy Procedure ("Fed.R.Bankr.P.") is the most appropriate, if not the exclusive method, whereby an unexpired lease may be assumed. *See also* Fed.R.Bankr.P. 6006(a).

In 1985, a District Court in the case of *By-Rite Distributing, Inc. v. Brierley (In re By-Rite Distributing, Inc.)*, 55 B.R. 740, 742 (N.D.Utah 1985), while dealing primarily with the question of whether or not the bankruptcy court must approve assumption of an unexpired lease within sixty (60) days following the order for relief, concluded, "that the trustee assumes or rejects the lease within the meaning of Section 365(d)(4) when he makes up his mind to do so and communicates his decision in an appropriate manner, such as by filing a motion to assume."

The *By-Rite* court acknowledged the split in the attitude of courts as to the correct manner of assumption citing both *In re Ro-An Food Enterprises Ltd., supra,* and *In re Kelly Lyn Franchise Co., Inc., supra,* but concluded that "This Court does not reach the question of what actions short of filing a motion to assume, if any, constitute an assumption of the lease, since By-Rite unequivocally expressed its decision to assume by filing a motion to assume." *By-Rite Distributing, Inc. v. Brierley, supra* 55 B.R. at 742–3 n. 5. *See also Treat Fitness Center, Inc. v. Rainbow Investment Co. (In re Treat Fitness Center, Inc.),* 60 B.R. 878 (Bankr. 9th Cir.1986); *Matter of Communications Company of America,* 65 B.R. 580 (Bankr.M.D.Fla. 1986); *Matter of Burns Fabricating Co.,* 61 B.R. 955, 958 (Bankr.E.D.Mich.1986); *In re Hodgson,* 54 B.R. 688, 690 (Bankr.W.D. Wis.1985); *Corporate Property Investors v. Chandel Enterprises, Inc. (In re Chan-*

*del Enterprises, Inc.),* 64 B.R. 607, 609 (Bankr.C.D.Cal.1986).

In the instant case, when the parties appeared before the Court on May 8, 1987, Debtor's counsel had not interposed any answer or cross-motion communicating an intention to assume its lease of the Debtor's business premises. While Debtor's counsel did state on the record "the lease is going to be assumed, but of course time for that isn't ... the 60 days on that isn't up yet. Mr. Williams did tell me that he wanted to continue on with the lease"; and at a later point, "the only thing we have to do between now and the 15th of May is to file papers saying the corporation is going to continue on with the lease and that will be done.", nothing was filed by the Debtor confirming the intent alluded to by its attorney.

What is apparent is that Debtor's counsel clearly recognized the need to undertake some affirmative action to assume the lease "between now and the 15th of May", yet no such affirmative action was ever undertaken. However, it does appear from Campion's counsel's letter that as of June 15, 1987 Debtor was still in possession of the leased premises.

The Court therefore concludes that Debtor has failed to comply with § 365(d)(4), that there has been no waiver by Campion of Debtor's failure to comply, and the lease has consequently terminated by operation of law. The Court need not reach the other issues raised by Campion dealing with the curing of Debtor's pre-petition defaults, or the payment of post-petition pre-assumption rent.

There remains but one other issue for the Court to consider, and that is the relief to which Campion is entitled.

Campion's amended notice of motion sought alternatively that in the event Debtor did not assume the lease, it be directed to immediately surrender the corporate premises to him as receiver; Campion further sought a that "any defaults in above ordered payments" were to be treated as an administrative expense of the estate absent further notice or hearing.

■ While some courts have held otherwise, the Court believes the clear language of § 365(d)(4) entitles Campion to an immediate surrender of the premises by Debtor, rather than relegation to an action in state court seeking a warrant of eviction. Code § 365(d)(4) provides that if the trustee does not properly assume the non-residential real property lease, then he "shall immediately surrender such non-residential property to the lessor." There can be no other interpretation that this language warrants an order of surrender, rather than an order lifting the Code § 362 stay so that state court eviction proceedings may continue. *Ridgeview Lincoln-Mercury, Inc. v. Hurst Lincoln-Mercury, Inc. (In re Hurst Lincoln-Mercury, Inc.),* 70 B.R. 815, 15 BCD 807, 808 (Bankr.S.D.Ohio 1987).

Thus the Debtor shall surrender possession of the leased premises to Campion within ten (10) days of the entry of this Order.

■ Finally, Campion's request for payment of the post-petition pre-assumption rent as an administrative priority, absent notice and hearing, is supported by case law interpreting Code § 365(d)(3). *See Matter of Longua, supra,* 58 B.R. at 506; *Matter of Barrister of Delaware, Ltd.,* 49 B.R. 446 (Bankr.D.Del.1985); *Feld v. S & F Concession, Inc. (In re S & F Concession, Inc.),* 55 B.R. 689 (Bankr.E.D.Pa.1985).

Campion has alleged, without dispute, that the rent reserved in the lease was the sum of $4,000.00 per month. Thus, the rent which accrued within the 60–day period following March 13, 1987, the date of the Order for relief to date of the automatic rejection, would be $8,000.00, less any amount that Debtor may have paid as rent post-petition.

Therefore, it is

ORDERED:

1. That the lease entered into by and between the Debtor and Gerald O. Williams on July 1, 1983 as renewed is deemed rejected.

2. That Debtor shall surrender possession of the leased premises to Ronald E.

Campion, Receiver, within ten (10) days of the date of entry of this Order, and

3. Ronald E. Campion as Receiver shall have a claim pursuant to Code § 503(b)(1) in the sum of $8,000.00, less any rent paid by Debtor post-petition.