**In re ALBA PRESS, INC., Debtor.**

**Bankruptcy No. 185–50686–352.**

United States Bankruptcy Court, E.D. New York.

Oct. 30, 1985.

Finkel Goldstein & Berzow, New York City, for creditors.

Rosenberg & Rosenberg, Brooklyn, N.Y., for debtor.

## OPINION

MARVIN A. HOLLAND, Bankruptcy Judge:

On September 30, 1985, the debtor applied for an Order seeking the scheduling of a hearing on the debtor's application to assume its Lease, dated April 15, 1985, with Domal Transportation, Inc., as landlord. The proposed Order to Show Cause contains the following paragraph:

"ORDERED; that the time within which ALBA may assume or reject the Lease pursuant to § 365(a) of the Bankruptcy Code be and hereby is extended to a date 30 days following the hearing fixed in the foregoing decretal paragraph, subject to such further extension as the Court by order may permit...."

There is no indication that any party in interest was given notice of the application, the granting of which would have afforded to the debtor substantial rights to the detriment of its landlord.

The application indicates and for purposes of this application only, I find:

1. That Alba Press, Inc. filed its petition under Chapter 11 of the Bankruptcy Code on May 6, 1985;

2. Alba is in the printing and offsetting business.

3. Pursuant to a lease ("Lease") dated April 15, 1985, between DOMAL TRANSPORTATION, INC., as landlord ("Landlord") and ALBA, as tenant, ALBA occupies a space consisting of 6500 sq.ft. located in the building known as 264 Butler Street, Brooklyn, New York.

4. The rental charges provided for in the Lease are $1,500 per month for the first year, $1,625 per month for the second year and increasing each year thereafter at a rate of 7% over each preceding year. There is a security deposit with the Landlord of $1,500.

5. ALBA recently moved into these premises after the Lease expired at its previous place of business and because the prior landlord required that space for its own use. The present premises are necessary for the operations of the business. The rental charges represent a fair value in today's market and ALBA desires to remain in possession to continue operations at the premises throughout the reorganization period and thereafter.

6. ALBA has fully complied with the requirements of § 365(b)(3)(B) in that it has continued to abide by the performance requirements contained in the Lease remaining current with its rental obligations. There are no defaults existing under the lease which need to be cured prior to assumption pursuant to § 365(b)(1)(A). Moreover, ALBA's performance under the lease since its inception has never required the landlord to incur any expenses or damages by reason of defaults. Accordingly, there are no damages for which the Landlord might require compensation pursuant to § 365(b)(1)(B).

7. There is a substantial security deposit representing 1 month's rent in the hands of the Landlord which provides adequate assurance that the Landlord will suffer no damage in the event of ALBA's future default. Since ALBA has operated with a modest profit during the first months of its Chapter 11 reorganization, as indicated in the operating statements filed with this Court, there is no indication that the company will be unable to continue to operate profitably.

8. That the lease is a valuable asset of the estate and the continued occupation of its premises is necessary for the continued operation of the debtor's business and for an effective reorganization.

9. That on August 29, 1985, within 60 days of the order for relief, Honorable Cecelia H. Goetz signed an Order extending the time for the debtor to assume or

reject the subject lease "to 30 days from the date hereof, ..." and further ordering "that within such 30 days period, the debtor, as debtor-in-possession, is directed to make application to this Court on notice to the Landlord, all creditors and all other parties in interest of its intention to assume or reject the aforementioned Lease ..."

The debtor's application is rejected for the following reasons:

First, the proposed Order to Show Cause has two separate purposes: 1—to comply with Judge Goetz's August 29 direction, and 2—to obtain an order extending the time within which the lease might be accepted or rejected. Since the first purpose could have been achieved more easily by the customary notice of motion, it appears that the debtor's primary motive was to obtain an extension of time without providing other interested parties with either notice of the application or an opportunity to be heard.

■ Because this extension of time involves a substantial right of the landlord, it should not be granted *ex parte* absent a strong showing of compelling urgency, detailing the reasons why the notice required by custom, courtesy and constitution could not have been given. Minimal due process requires notice and an opportunity to be heard before substantial rights are affected. E.g. *Fuentes v. Shevin*, 407 U.S. 67, 80, 92 S.Ct. 1983, 1994, 32 L.Ed.2d 556 (1972).

Second, even had such notice been given, this Court is now without power to grant a further extension once 60 days has expired from the entry of the order for relief.

11 U.S.C. § 365(d)(2) provides:

"In a case under Chapters 9, 11, or 13 of this title, the trustee may assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor at any time before the confirmation of a plan but the court, on request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease."

However, the Bankruptcy Amendments and Federal Judgeship Act of 1984, P.L. 98–353, 11 U.S.C. § 365(d)(4), enacted July 10, 1984, abridges both the time within which the trustee may make its election and the power given to the court by Bankruptcy Rule 9006(b)(1) to extend that time as follows:

(4) Notwithstanding paragraphs (1) and (2), in a case under any chapter of this title, if the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief, *or within such additional time as the court, for cause, within such 60-day period, fixes,* then such lease is deemed rejected, and the trustee shall immediately surrender such nonresidential real property to the lessor (emphasis supplied).

■ Since the debtor's present *ex parte* application has not been made within the initial 60-day period, this Court is now powerless to grant a further extension.

Counsel for the debtor has referred the Court to a yet unpublished decision of the Honorable C. Albert Parente in the matter of *In re Unit Portions of Delaware, Inc.*, 53 B.R. 83 (Bkrtcy.N.Y.1985) in which Judge Parente addresses the question of whether the order extending time must be made within the 60-day period or whether it is sufficient if the application to extend is made within the 60-day period but the order is not signed until after the expiration of the period. That case is not applicable to the situation presently before the Court. In Judge Parente's case, the application was made during the initial 60-day period. In the case presently before the Court, the application was made long after the expiration of the original 60-day period.

Two other courts have also recently issued decisions construing § 365(d)(4). The courts in *In Re Dulan*, 52 B.R. 739, 3 Bankr.L.Rep. (CCH) ¶ 70,729 at 87,654 (Bkrtcy.C.D.Cal.1985) and *In re Bon Ton Restaurant and Pastry Shops, Inc.*, 52

B.R. 850, 3 Bank.L.Rep. (CCH) ¶ 70,746 at 87,700 (Bkrtcy.E.D.Ill.1985) both agreed that to preserve its right to assume a non-residential lease of real property, the debtor must file a motion to assume the lease within 60 days of filing its initial petition. Unexpired commercial real estate leases "are now deemed rejected under section 365(d)(4) if not assumed within sixty days after the order for relief unless the court, for cause, grants additional time during that sixty-day period." *Id.* 852, 3 Bank.L. Rep. (CCH) ¶ 70,764 at 87,701. While these cases reached conflicting conclusions as to whether the order must be made within the sixty-day period or whether it is sufficient for the application to be made within that time, there is no longer any doubt that once the original sixty-day period expires additional extensions are not available.

Counsel for the debtor has also pointed out the potential hardship to the debtor which may be occasioned by a denial of this application.

"[W]hen the express language of a statute is clear, a court will not adopt a different construction absent clear legislative history contradicting the plain meaning of the words." *In re Gusam Restaurant Corp.*, 737 F.2d 274, 276 (2d Cir.1984 (quoting *United States v. Holroyd,* 732 F.2d 1122, 1125 (2d Cir.1984)).

There is no obscurity or ambiguity in the language of the statute as it applies to the facts of this case.

It is not my role to question the merits of declared congressional policy, nor to be swayed by any hardship that the statute's application may cause the debtor. Section 365(d)(4) mandates a denial of the application.

Application denied.